## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JACOB NELSON, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-22-396-D |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | (District Court of Grady County, |
| COMPANY, *et al*., | ) | Oklahoma, Case No. CJ-2022-65) |
| | ) | |
| Defendants. | ) | |

## ORDER REMANDING CASE

Before the Court is Plaintiffs' Motion to Remand [Doc. No. 13], contesting the jurisdictional basis for removal of this case to federal court by Defendant State Farm Fire and Casualty Company ("State Farm").[1]   The Motion is governed by 28 U.S.C. § 1447(c), which mandates the remand of a removed case whenever "it appears that the district court lacks subject matter jurisdiction."   Plaintiffs challenge allegations of fraudulent joinder made in the Notice of Removal to establish the existence of diversity jurisdiction even though they have sued a nondiverse defendant, Rick Johnston Insurance Agency, Inc. ("Johnston").   For the following reasons, the Court finds State Farm has not carried its burden to show that Plaintiffs have no possible claim against the insurance agent, Johnston, based on the factual allegations of their pleading.

---

[1]   The motion is fully briefed.   *See* State Farm's Resp. Br. [Doc. No. 14]; Pls.' Reply Br. [Doc. No. 15].

**Factual and Procedural Background**

Plaintiffs brought suit in state court to recover damages from State Farm for breach of contract and breach of an insurer's duty of good faith and fair dealing after State Farm denied a loss claim under their homeowners' insurance policy for hail damage to the roof of their house. Plaintiffs also sued State Farm's agent, Johnston, for negligent procurement and constructive fraud in allegedly obtaining a policy that did not provide the replacement cost coverage they requested and making material misrepresentations. *See* Pet. [Doc. No. 1-2], ¶¶ 39-63. Johnston is an Oklahoma corporation having the same citizenship as Plaintiffs.

State Farm removed the case to federal court based on diversity jurisdiction under 28 U.S.C. § 1332 by alleging that Plaintiffs fraudulently joined the insurance agent to defeat removal so the agent's citizenship should be disregarded. *See* Notice of Removal [Doc. No. 1], ¶¶ 4, 6. State Farm asserted that Plaintiffs' state-court Petition fails to state a viable claim against Johnston under either a negligent procurement or constructive fraud theory. *Id*. ¶ 7. According to State Farm, Plaintiffs' factual allegations show that Johnston procured a replacement cost policy as requested and that the alleged misconduct did not cause Plaintiffs' alleged damages, which are based on State Farm's denial of their claim and not inadequate coverage. *Id*. ¶¶ 8-11.

In their Motion, Plaintiffs dispute State Farm's characterization of their claims and framing of the issues, and assert that they have viable claims against Johnston. Plaintiffs argue that they requested from Johnston "full replacement cost coverage for their roof" which was not procured as promised, and that Johnston "advised Plaintiffs their roof was

in good condition and qualified" for such coverage, which was inconsistent with State Farm's denial of their claim "because of the roof's purported condition."   *See* Pls.' Mot. at 16.   Based on allegations in their pleading regarding Johnston's role in procuring the policy and a list of alleged misrepresentations, Plaintiffs contend they have stated claims of negligent procurement and negligent misrepresentation against Johnston.   *Id.* at 16-17, 21-22 (citing Pet. ¶¶ 11-12, 56-57).

### Standard of Decision

Subject matter jurisdiction over this case turns on the doctrine of fraudulent joinder. "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."   *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (internal quotation omitted); *Long v. Halliday*, 768 F. App'x 811, 814 (10th Cir. 2019) (unpublished).[2]   State Farm relies solely on the second basis. As the removing party, State Farm must establish federal jurisdiction exists.   *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

"The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."   *Dutcher*, 733 F.3d at 988 (internal quotation omitted); *Long*, 768 F. App'x at 814.   In this case, State Farm must show "there is no possibility that [Plaintiffs] would be able to establish a cause of action against [the insurance agent] in state court."   *See Montano v. Allstate Indem.*,

---

[2]   Unpublished opinions are cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

No. 99-2225, 2000 WL 525592, *1 (10th Cir. April 14, 2000) (unpublished); *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished) ("the removing party must show that the plaintiff has no cause of action against the fraudulently joined defendant"). Stated differently, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."   *Nerad v. AstraZeneca Pharm., Inc*., 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished).   The nonliability of a defendant alleged to be fraudulently joined must be "established with complete certainty."   *See Smoot v. Chicago, Rock Island & Pac. R.R. Co*., 378 F.2d 879, 882 (10th Cir. 1967); *Dodd v. Fawcett Publ'ns, Inc*., 329 F.2d 82, 85 (10th Cir. 1964). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)."   *Montano*, 2000 WL 525592 at *2.[3]

### Discussion

State Farm contends the formulaic allegations of the Petition fail to state a viable claim against Johnston.   State Farm points to similar allegations in other cases filed by Plaintiffs' attorneys and argue that, in this case, the claims asserted are inconsistent with the factual basis of Plaintiffs' action and their alleged damages.   Upon consideration, the

---

[3]   In assessing fraudulent joinder, "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."   *Dodd*, 329 F.2d at 85 (citations omitted); *see Smoot*, 378 F.2d at 881-82 ("it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal"); *accord Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished).   In this case, however, State Farm relies solely on Plaintiffs' pleading, the insurance policy, and similar petitions filed by Plaintiffs' attorneys in other cases.

Court finds that State Farm's arguments ignore the totality of Plaintiffs' pleading and improperly prejudge the credibility of Plaintiffs' allegations.

## A.      Plaintiffs' Factual Allegations and Claims Against Johnston

Accepting the allegations of Plaintiffs' pleading, they purchased a "homeowners replacement cost policy of insurance" from State Farm through Johnston's office.   *See* Pet. ¶¶ 4-5.   "Plaintiffs specifically requested a policy that would fully replace their roof in the event of a loss."   *Id*. ¶ 7.   Johnston was "the first line of underwriting for State Farm" and was required to inspect the property in order to verify its condition, accurately measure its dimensions, and gather information about its amenities and construction.   *Id*. ¶¶ 8, 40.   For the house "to qualify for the full replacement cost coverage on the roof (as opposed to actual cash value) that Plaintiffs had requested, [Johnston] was required to verify the condition of the roof to ensure its condition satisfied State Farm's underwriting guidelines."   *Id*.   Plaintiffs allege specifically: "[F]or replacement cost coverage (as opposed to actual cash value coverage), the age, condition and predominate roof surface materials are all factors that [not] only affect the eligibility to replacement cost coverage on a roof, but also dictate the calculation of the increased premium associated with the purchase of this coverage."   *Id*. ¶ 12.

Johnston performed the required inspection and informed Plaintiffs "the home (and roof) met all State Farm's underwriting requirements" and they "were eligible to purchase full replacement coverage." *Id*. ¶¶ 9, 42. "Neither Johnston nor State Farm advised Plaintiffs at any time that their home (including the roof) had any 'pre-existing' damage . . . or did not meet the underwriting guidelines of State Farm."   *Id*. ¶ 9; *accord* ¶¶ 12, 41.

5

Also, using State Farm's valuation software, Johnston calculated and determined for Plaintiffs' house a policy limit to cover "100 percent of its replacement cost value." *Id.* at ¶¶ 11, 43.   Johnston then procured "and State Farm issued a homeowners' full replacement cost insurance policy" that provided coverage for Plaintiffs' property, including "their residence, household contents, and other structures," and in an amount represented to be "sufficient to repair and/or replace Plaintiffs' Insured Property back to its pre-loss condition in the event of a loss." *Id.* ¶¶ 4, 10-11, 44.

On April 28, 2020, Plaintiffs' home sustained hail damage.   In compliance with Johnston's instructions, Plaintiffs had several roofing professionals inspect their roof before filing a loss claim, and the consensus was that Plaintiffs' roof had sustained hail and wind damage.   Plaintiffs notified State Farm on January 29, 2021, of the damage to their roof.   Plaintiffs recount State Farm's adjustment of their claim as follows:

> On February 24, 2021, State Farm (through its adjusters) confirmed Plaintiffs' home had sustained wind/hail damage.   State Farm concluded the pipe flashings and a rain cap, along with damage to a shed roof had been damaged by hail, but the damages were under the deductible.   State Farm also inexplicitly [sic] concluded that despite sustained damage to the soft metals, none of the shingles to the roof of the home were damaged by hail. As a result, nothing was paid to Plaintiffs for any of the sustained damage. State Farm reached this conclusion by implementing a state-wide practice of ignoring hail damage that does not penetrate the shingle mat: that is according to State Farm claims handling practices, hail impacts and bruises don't constitute damage unless they penetrate the back side of the mat – which by design effectively limits payment under the policy to only the rarest and most severe hail storms, and by utilizing "estimating software" it knew was inaccurate to calculate a damage estimate so as to knowingly escape any payment on Plaintiffs' claim.

*Id.* ¶ 17.   Plaintiffs disagreed with State Farm's assessment but were unsuccessful in their efforts to obtain a reinspection by State Farm or to dispute the assessment.   These efforts

included submitting the opinion of another roofer who "agreed the roof had sustained hail damage and that the roof should have been totaled by State Farm." *Id.* ¶ 18. Plaintiffs supplied State Farm "with independent estimates from [two roofing companies that] determined the roof was a total loss" and provided replacement cost estimates in the amounts of $7,023.00 and $10,781.86 respectively. *Id.* ¶ 19.

Plaintiffs further allege that State Farm engaged in a statewide scheme in Oklahoma "of systematically denying and/or underpaying valid roof claims" and the handling of their claim was consistent with this scheme. *Id.* ¶¶ 20, 23. Specifically, "State Farm denied Plaintiffs' roof claim on the grounds that the claimed damage was the result of pre-existing damage – a non-covered cause of loss under Plaintiffs' Policy, despite the fact it failed to perform a pre-inception and/or periodic renewal inspection (or any other required inspection) demonstrating the claimed damage was, in fact, pre-existing." *Id.* ¶ 23. Thus, Plaintiffs allege in their pleading two reasons why State Farm denied their claim for hail damage to the roof of their house:   1) the damage to the shingles was not a covered loss (without penetration of the shingle mat); and 2) there was a noncovered cause of loss (preexisting damage).

Plaintiffs claim in Count III of their pleading for "Negligent Procurement of Insurance" that Johnston acted negligently during their purchase of the replacement cost policy in the performance of underwriting-related duties, such as inspection of the roof, screening for poor condition or preexisting damage, and advising Plaintiffs whether their house qualified for coverage. Johnston allegedly breached duties "to accurately inform Plaintiffs of all coverages and advise them of the benefits, risks, limitations and exclusions

in the coverage procured" and "to perform a reasonable inspection of the Insured Property prior to procuring the replacement cost coverage of said Policy to ensure no changes to the policy were necessary or required."   *Id*. ¶ 47.   Johnston allegedly breached these alleged duties "by failing to adhere to State Farm's underwriting guidelines and failing to accurately and truthfully answer Plaintiffs' questions regarding the Policy coverages, and by promising Plaintiffs the Policy selected and calculated by him for Plaintiffs was correct and would fully repair and/or replace the Insured Property (including the roof), back to its pre-loss condition in the event of a loss."   *Id*. ¶ 50.

Similarly, Plaintiffs claim in Count IV for "Constructive Fraud and Negligent Misrepresentation" that, among other things, "Johnston represented to Plaintiffs that their Insured Property met all of State Farm's underwriting guidelines and that there were no preexisting issues with the Insured Property (including the roof) that would either prevent issuance of the replacement cost policy or exclude coverage for any damages sustained to their Insured Property."   *Id*. ¶¶ 55, 56(d).   Plaintiffs allege that "Johnston misrepresented the nature and character of the Policy procured" and "the replacement cost [coverage] as one which would fully restore, replace and/or repair Plaintiffs' Insured Property (including their roof) . . . to its pre-loss condition in the event of a loss by a covered event."   *Id*. ¶ 57. Johnston's misrepresentations allegedly misled Plaintiffs and "induced [them] to accept and purchase the State Farm replacement cost policy (with a full coverage endorsement for the roof)" and caused them to sustain "damages, including deprivation of monies rightfully belonging to them."   *Id*. ¶¶ 59-60, 62.

### B.    State Farm's Showing of Fraudulent Joinder

State Farm seeks to defeat Plaintiffs' negligent procurement claim based on the principle that, although an insurance agent has a duty to use reasonable care in the procurement of insurance, liability results "[o]nly if 'by the agent's fault, insurance is not procured as promised and the insured suffers a loss.'"   *See* Resp. Br. at 9 (quoting *Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶ 13, 979 P.2d 266, 269) (emphasis omitted).   State Farm argues that Plaintiffs cannot establish the causation element of a negligence claim against Johnston because, according to their own pleading, he procured the replacement cost policy they requested and the denial of their claim "had nothing to do with the presence or absence of 'replacement cost coverage.'"   *Id*. at 10, 13-14.   State Farm contends replacement cost coverage was not implicated because there was no covered loss; "State Farm did not find hail damage to the shingles" so "[t]he question of how much State Farm should pay to repair or replace the shingles . . . never arose."   *Id*. at 15.

Similarly, as to constructive fraud, State Farm argues that "the element of causation is absent" because "Plaintiffs have not alleged facts to demonstrate they suffered damages as a result of the alleged misstatements or omissions."   *Id*. at 23.   State Farm relies on the alleged fact that it refused "to pay to replace Plaintiffs' shingles because it found they were not damaged by wind or hail" to argue that its claim decision "had nothing to do with inspections being completed, whether the roof met all 'underwriting guidelines,' [or] whether Plaintiffs had replacement cost coverage."   *Id*. at 24.

While these arguments are, to an extent, facially persuasive, they overlook Plaintiffs' additional allegations regarding State Farm's alleged denial of their roof claim.

Plaintiffs plainly allege that one reason why State Farm rejected their claim was that any loss was caused by preexisting damage and therefore not covered.   *See* Pet. ¶ 23 ("State Farm denied Plaintiffs' roof claim on the grounds that the claimed damage was the result of pre-existing damage . . .").   This allegation arguably implicates Johnston's inspection of the roof, State Farm's underwriting guidelines, and coverage.   State Farm acknowledges an allegation in Plaintiffs' pleading that the replacement cost coverage of their policy was "illusory" but faults them for failing to "explain why that is the case."   *Id*. at 13 (quoting Pet. ¶ 10).   In the Court's view, however, State Farm's arguments ignore or attempt to discount the allegations of Plaintiffs' pleading.   Although the Petition is not a model of clarity and might not state a plausible tort claim against Johnston under federal pleading standards, the Court cannot say that Plaintiffs have no possibility of recovery against Johnston.   Therefore, State Farm's claim of fraudulent joinder fails.

**Conclusion**

For these reasons, the Court finds that Defendant Rick Johnston Insurance Agency, Inc. cannot be disregarded as a party and, thus, complete diversity of citizenship does not exist.   Therefore, this Court lacks subject matter jurisdiction and must remand the case to state court under 28 U.S.C. § 1447(c).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand [Doc. No. 13] is **GRANTED**.   This case is **REMANDED** to the District Court of Grady County, Oklahoma.

**IT IS SO ORDERED** this 19th day of December, 2022.


TIMOTHY D. DeGIUSTI
Chief United States District Judge